UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

STEVEN ROBINSON, on behalf of himself : and all others similarly situated,

        Plaintiff,        :     Civil Action No.: 11-cv-02183(JBS)(JS)

        v.

HORNELL BREWING CO.,                  **SECOND AMENDED**
FEROLITO VULTAGGIO & SONS,        **CLASS ACTION COMPLAINT**
ARIZONA BEVERAGE COMPANY LLC,
BEVERAGE MARKETING USA, INC.
and ARIZONA BEVERAGES USA LLC

        Defendants.

---

      Plaintiff, on behalf of himself and all others similarly situated, by and through his undersigned counsel, upon knowledge as to his own acts and upon information and belief as to Defendants and their actions, brings the following Second Amended Class Action Complaint against Defendants Hornell Brewing Co. ("Hornell"), Ferolito, Vultaggio & Sons ("FV&S"), AriZona Beverage Company LLC ("AriZona"), Beverage Marketing USA, Inc. ("BMU"), and AriZona Beverages USA LLC ("ABU") (collectively "Defendants").

## NATURE OF ACTION

      1.     This is a class action for declaratory judgment and injunctive relief, and reimbursement of individual losses and individual damages sustained by Plaintiff, alleging that Defendants' marketing, advertising and promotion of its beverages is false, misleading, inaccurate, and deceptive.

      2.     Plaintiff asserts that Defendants engage in the unlawful marketing, advertising and promotion of their products as "100% NATURAL," "NATURAL" or "ALL NATURAL"

(hereinafter referred to collectively as "100% NATURAL") when the beverages contain high fructose corn syrup ("HFCS") and/or other non natural products. The products represented by Defendants to be 100% NATURAL, but that contain HFCS and other non natural ingredients, include the following:

- Arizona Iced Tea with Lemon Flavor
- Arizona Iced Tea with Raspberry Flavor
- Arizona Lemon Iced Tea
- Arizona Peach Iced Tea
- Arizona Raspberry Iced Tea
- Arizona Southern Style Real Brewed Sweet Tea
- Arizona Green Tea with Ginseng and Honey
- Arizona Extra Sweet Green Tea with Ginseng and Honey
- Arizona Pomegranate Green Tea
- Arizona Chinese Apple Pomegranate Green Tea
- Arizona Blueberry White Tea
- Arizona Mandarin Orange Green Tea with Ginseng & Honey Jasmine
- Arizona Crazy Cocktail
- Arizona Asian Plum Green Tea with Ginseng & Plum Juice
- Arizona Rx Stress Herbal Iced Tea
- Arizona Rx Energy Herbal Tonic
- Arizona Lemonade
- Arizona Mucho Mango
- Arizona Kiwi Strawberry
- Arizona Orangeade
- Arizona Fruit Punch
- Arizona Grapeade
- Arizona Red Apple Green Tea with Ginseng and Apple Juice
- Arizona Georgia Peach Green Tea with Ginseng and Peach Juice
- Arizona Sun Brewed Style Iced Tea with Lemon Flavor
- Arizona Black Tea with Ginseng And Honey
- Arizona Sun Brewed Style Sweet Tea
- Arizona Sun Brewed Style Iced Tea with Raspberry Flavor
- Arizona Sun Brewed Style Iced Tea with Peach Flavor

(hereinafter referred to collectively as "Arizona brand beverages")

      3.     The term "100% NATURAL" is regularly used by manufacturers to describe a product that does not have any chemically altered or man-made ingredients, and that therefore is a more healthy choice than competing products that contain processed ingredients – and worth a

premium price because of that benefit. However, HFCS is a highly processed sugar substitute that does not exist in nature and is not "100% NATURAL." The use by Defendants of the term "100% NATURAL" to describe its Arizona brand beverages when, in fact, those products are not, is misleading, inaccurate, deceptive and unconscionable.

4. Plaintiff brings this action on behalf of himself and on behalf of a class of similarly situated persons, seeking class wide declaratory judgment and injunctive relief, and reimbursement of individual losses and individual damages.

5. Plaintiff's claims against Defendant include (1) violation of the New Jersey Consumer Fraud Act, N.J.S.A., 56:8-1 *et seq*. (2) Unjust enrichment, (3) Breach of Express Warranty and (4) Breach of the Implied Warranty of Merchantability.

## PARTIES

6. Plaintiff is, and at all times relevant hereto has been, a citizen of New Jersey residing at 263 Franklin Avenue in Ridgewood, Bergen County, and is over the lawful age of majority. Plaintiff is filing this claim on behalf of himself and all citizen of New Jersey who purchased an Arizona brand beverage within the State of New Jersey, from April 13, 2005, until such a time as Defendants reform said practice, that was marketed, advertised or promoted as being "100% NATURAL," but contained HFCS or other non-natural ingredients. Specifically excluded from the Class is any entity in which Defendants have a controlling interest, and the officers, directors, employees, affiliates, subsidiaries, legal representatives, heirs, successors, and assigns of any such entity, together with any immediate family member of any officer, director or employee of said companies. Also excluded from the Class is any Judge and Magistrate Judge presiding over this Action and members of their immediate families, and any counsel for any Defendants, counsel's staff, and immediate families.

7. Defendant BMU is a privately-held S corporation organized and existing under the laws of New York, with its principal place of business in Woodbury, New York. BMU holds the marketing and distribution rights to Arizona Iced Tea products, including those beverages that are at issue in the present matter.

8. Defendant Hornell is a New York corporation with its principal place of business located in Woodbury, New York. Hornell is the parent company of Defendant FV&S.

9. Defendant FV&S is a New York corporation with its principal place of business in Woodbury, New York. FV&S oversees the manufacture, brewing, sale and distribution of AriZona Iced Tea beverages, including those beverages that are at issue in the present matter.

10. Defendant AriZona, a branch of Defendant FV&S, is a privately-held company with its principal place of business in Woodbury, New York, responsible for the manufacture and brewing of Arizona Iced Tea beverages, including those beverages that are at issue in the present matter.

11. Defendant ABU is a New York corporation with its principal place of business in Woodbury, New York. ABU distributes and markets Arizona brand name products, including those beverages that are at issue in the present matter.

12. Defendants, and each of them, are/is responsible for the manufacture, brewing, sale and distribution of Arizona brand beverages that were, and continue to be, unlawfully marketed, advertised and promoted to consumers as "100% NATURAL," and which Plaintiff purchased. As such, Defendants are each a "person" as defined under the NJCFA.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(d).

14. This is a civil class action that was commenced after 2005 in which the matter in

controversy exceeds $5,000,000, exclusive of interest and costs.

15. Plaintiff, a citizen of Bergen County, New Jersey, is a citizen of a state different than Defendants.

16. This action does not satisfy the exemptions to jurisdiction found in 28 U.S.C. §§1332(d)(4)(A) and (B).

17. This action does not satisfy the exemptions to jurisdiction found in 28 U.S.C. §1332(d)(3).

18. Defendants are not charitable organizations.

19. Venue is proper in this Court under 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claims enumerated herein occurred in this judicial district.

## CLASS ACTION ALLEGATIONS

20. Plaintiff brings this action on behalf of himself and other similarly situated persons, pursuant to Federal Rule of Civil Procedure 23. Plaintiff seeks to represent the following Class:

> All New Jersey citizens who purchased within the State of New Jersey, for personal consumption and not for resale, an Arizona brand beverage marketed, advertised and promoted as "100% NATURAL," but which contained HFCS or other non-natural ingredients, from April 13, 2005, until such time as Defendants reform said practice.

21. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is presently unknown, and can be ascertained only through appropriate discovery, Plaintiff believes the members of the Class exceed one thousand (1,000) persons. During the Class period millions of bottles of Arizona brand beverages have been sold within the state.

22. Common questions of law and fact exist as to all members of the Class. Among

questions of law and fact common to the Class are:

- Whether use of the phrase "100% NATURAL" to market, advertise and promote beverages containing HFCS is misleading, inaccurate deceptive or unconscionable.

- Whether Defendants expressly and/or impliedly warranted that its beverages contained "100% NATURAL" ingredients.

- Whether Defendants breached warranties by using HFCS as an ingredient in beverages marketed, advertised and promoted as "100% NATURAL."

- Whether Defendants have been unjustly enriched as a result of their unlawful business practices.

- Whether Defendants' actions as described herein violate the NJCFA.

- Whether Defendants should be enjoined from continuing the practices described herein.

23. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of the NJCFA, and Defendants' breach of express and implied warranties.

24. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action litigation.

25. A class action is appropriate because Defendants have acted, and continue to act, on grounds that generally apply to the Class, so that final injunctive relief is appropriate respecting the class as a whole.

26. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as

the damages suffered by the individual members of the Class may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this class action.

27. Plaintiff and members of the putative Class are cohesive because they all share common definable traits. Plaintiff and each putative class member have been and continue to be subjected to the same common course of unlawful conduct derived from the same underlying set of common facts—Defendants' uniform representation of Arizona brand beverages as 100% NATURAL. Plaintiff and each member of the putative Class are consumers who have been exposed to Defendants' uniform representations.

28. Plaintiff and each member of the putative Class will benefit from the relief sought by Plaintiff because the false, misleading and deceptive representations made to each Class member were potentially damaging, and making Class members aware of Defendants' practice will enable Class members to choose their individual course of action and avoid harm moving forward.

## STATEMENT OF FACTS

29. Defendants manufacture, distribute, market, advertise, promote and sell Arizona brand beverages throughout the United States, including the State of New Jersey. Since Defendants began selling Arizona brand beverages in 1992 the product has become the top selling ready-to-drink tea in the United States. Defendants' line of Arizona brand beverages includes, among others set forth in paragraph 2 above, Lemon Iced Tea, Raspberry Iced Tea, Peach Iced Tea, Green Tea with Ginseng and Honey, and Rx Stress Herbal Iced Tea.

30. Defendants do not market, advertise or promote their Arizona brand beverages via

mass media. Instead, the only marketing, advertising and promotion of its Arizona brand beverages is via their website and product labels.

31. The Arizona brand beverages are sold in liquid and powdered form and are packaged in a variety of containers including bottles, cans and waxed cartons. To help the product stand out, Defendants market their beverages in a uniquely tall container so that it stands "head and shoulders" above the rest.

32. In its marketing and advertising Defendants promote their Arizona brand beverages as "100% NATURAL."

33. As an example, on the neck of the Arizona Lemon Iced Tea, Raspberry Iced Tea and Peach Iced Tea 20 ounce bottle necks – the bottle necks that stand "head and shoulders" above competitive products situated in nearby display areas, Defendants promote the beverages as "100% NATURAL."

34. Similarly, on the 20 ounce bottles of AriZona Rx Stress Herbal Iced Tea and AriZona Green Tea with Ginseng and Honey, Defendants promote the beverages as "100% NATURAL" and "100% ALL NATURAL" respectively.

35. Collectively, Defendants promote their beverages as "100% NATURAL" on all of their Arizona brand beverage containers.

36. Defendants represent their Arizona brand beverages as such because there exists a market opportunity for all-natural products, and the product label is an effective means by which to market to consumers.

37. Along the same lines Defendants market, advertise and promote their Arizona brand beverages as "100% NATURAL" on their website, www.drinkarizona.com. For example, during the relevant time period, Defendants have made the following statements regarding their

Arizona brand beverages on their website:

- "We make sure our beverages are made from 100% natural ingredients."

- "AriZona beverages are made from 100% natural ingredients."

- "[O]ur approach of creating delicious products from all natural ingredients is surprisingly unique."

38. In fact, Arizona brand beverages are not "100% NATURAL" because the beverages, including all Arizona brand beverages set forth in paragraph 2, contain HFCS.

39. Although Arizona brand beverage labels disclose HFCS as an ingredient, Defendants do not disclose, nor would a reasonable consumer know, that the HFCS contained in the Arizona brand beverages is not a natural ingredient.

**HIGH FRUCTOSE CORN SYRUP ("HFCS")**

40. HFCS is a highly processed sugar substitute and is not "100% NATURAL," "NATURAL" or "ALL NATURAL."

41. Despite its two (2) major constituents, glucose and fructose, being widely found in nature, HFCS does not exist in nature.

42. HFCS is produced by processing cornstarch to yield glucose, and then processing a significant portion of the glucose to produce fructose.

43. To produce HFCS, cornstarch is first treated with a purified enzyme, alpha-amylase, to produce shorter chains of sugars called polysaccharides. Alpha-amylase is industrially produced by a bacterium, usually Bacillus.

44. The polysaccharides (short chains of sugar) are then broken down even further by adding a second enzyme called glucoamylase. Glucoamylase is industrially produced by a fungus, Apergillus. The addition of glucoamylase to the polysaccharides yields the simple sugar

glucose.

45.     In lieu of using alpha-amylase or glucoamylase, acids may be used in the HFCS production process.

46.     A third enzyme, gluco-isomerase, then converts glucose to a mixture of about 42 percent fructose and 50 to 52 percent glucose with some other sugars (or short polymers of glucose) mixed in.  While alpha amylase and glucoamylase are added directly to the slurry, pricey glucose-isomerase is packed into columns and the sugar mixture is then passed over it.  The sweet liquid with 42 percent fructose is used as HFCS 42 in some applications.

47.     To obtain a higher percentage of fructose in HFCS, two more steps are necessary.  First, a liquid chromatography step takes the mixture to 90 percent fructose.  Next, the 90 percent mixture is back-blended with the original mixture to yield a final concentration of about 55 percent fructose.  This mixture is what the industry calls HFCS 55, and is the industry standard.

48.     Although the base constituents used to create HFCS are created from naturally occurring substances, the process described above does not occur naturally.  In fact, HFCS was not mass produced until the 1970's.  Prior to that there was no HFCS in products.

49.     Furthermore, the molecules in HFCS (and Arizona brand beverages) were not extracted from natural sources.  Instead, the molecules in HFCS were created through enzymatically catalyzed chemical reactions in factories.

50.     Finally, the substances used to break down, treat and process HFCS prior to it being delivered to Defendants for inclusion in Arizona brand beverages are not natural.

**PLAINTIFF'S PURCHASE OF ARIZONA ICED TEAS**

51.     On or around March 31, 2011, Plaintiff purchased a 20-ounce bottle of Arizona Lemon Iced Tea at the Quick Stop convenience store located at 83 Godwin Avenue in

Ridgewood, New Jersey. Plaintiff paid $1.99 for the 20 ounce bottle at the time of purchase.

52. On numerous other occasions over the course of the years preceding the filing of this Complaint, Plaintiff purchased Arizona brand beverages at various locations throughout the State, including the Quick Stop convenience store in Ridgewood, New Jersey. For example, in the weeks prior to and leading up to April 6, 2011, Plaintiff paid $2.00 for a 20 ounce bottle of Arizona Lemon Iced Tea at Chestnut Deli in Ridgewood, New Jersey. Similarly, in and around March 29, 2011, Plaintiff paid $2.25 for a 20 ounce bottle of Arizona Lemon Iced Tea at Wide World of Bagels in Ridgewood, New Jersey.

53. Each time Plaintiff purchased each of the Arizona brand beverages, Defendants marketed, advertised and promoted the beverages as "100% NATURAL."

54. Each time Plaintiff purchased each of the Arizona brand beverages, Defendants represented on the products' bottle that the beverage was "100% NATURAL."

55. Each time Plaintiff purchased each of the Arizona brand beverages, he did so because he thought, based upon Defendants' representations, that the beverages were all natural.

56. At the time of each said purchase referred to above, Plaintiff purchased Arizona brand beverages because he wanted a beverage that was all natural. Plaintiff would not have purchased the Arizona brand beverages had he known that they were not "100% NATURAL," as represented by Defendants.

57. As a result of its marketing, advertising and promotion, Defendants were able to and did charge a premium price for its Arizona brand beverages – a price higher than that charged for products that are not "100% NATURAL."

58. Each time Plaintiff purchased the Arizona brand beverages, beverages that Defendants represented and Plaintiff thought were all natural, Plaintiff was willing to, and did,

pay a premium price as compared to the price of other comparable iced tea beverages that were not all natural. For example, at the time of Plaintiff's March 31, 2011, purchase, the Quick Stop was also selling 20 ounce bottles of Lipton Brisk for $1.39. The Lipton Brisk was not labeled as natural.

59. However, in contrast to the manner in which Defendants marketed, advertised and promoted its beverages on their website, and in contrast to the representations on the bottle of Defendants' beverages, the Arizona brand beverages purchased by Plaintiff were not "100% NATURAL."

60. Defendants' claims that Arizona brand beverages are "100% NATURAL" are materially false and misleading because the beverages contain HFCS, a product that is not all natural.

61. As a result of Defendants' misleading, inaccurate, deceptive and unconscionable marketing, advertising and promotion of its Arizona brand beverages, Plaintiff suffered an ascertainable loss in that he paid a premium for Defendants' Arizona brand beverages, which he thought were 100% NATURAL, but received something less than and different from what was promised and bargained for – a product that was not, in fact, all natural.

### COUNT I

### (VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT)

62. Plaintiff repeats and re-alleges each and every allegation above, as if set forth in full herein.

63. The NJCFA, N.J.S.A. §56:8-2 (2006) provides, in relevant part:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise,

misrepresentation, or the knowing, [sic] concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice…

64.     Defendants' business practices of marketing, advertising and promoting its Arizona brand beverages as "100% NATURAL" constitutes the use by Defendants of unconscionable commercial practices, deception, false promise and misrepresentation, and the knowing concealment of material fact with the intent that others rely, and, thus constitutes multiple, separate violations of the NJCFA.

65.     In marketing, advertising and promoting its beverages, Defendants made the material misrepresentations and omissions as set forth in this Complaint in New Jersey.

66.     Defendants' unlawful conduct set forth in this Complaint has the capacity to, and did in fact, mislead or deceive consumers, including Plaintiff and members of the Class.

67.     Defendants' unconscionable commercial practices, deceptions, false promises, misrepresentations and intentional omissions set forth in this Complaint are material in that they relate to matters to which reasonable persons, including Plaintiff and members of the Class, would attach importance in their purchasing decisions or conduct regarding the purchase of Arizona brand beverages.

68.     As a result of Defendants' practices as described herein, Plaintiff has suffered a calculable and ascertainable loss of money or property in that he paid a premium price for an Arizona brand beverage misrepresented as "100% NATURAL", as compared to similar products

that are not represented to be all natural.

## COUNT II

### (UNJUST ENRICHMENT AND COMMON LAW RESTITUTION)

69. Plaintiff repeats and re-alleges each and every allegation above, as if set forth in full herein.

70. As a result of Defendants' wrongful and deceptive conduct, Plaintiff has suffered a detriment while Defendants have received a benefit.

71. In purchasing an Arizona brand beverage, Plaintiff conferred upon Defendants a benefit by paying a premium price for Defendants' beverages. Plaintiff paid the premium price for Defendants' Arizona brand beverage with the expectation that he would receive a beverage that was "100% NATURAL."

72. In accepting the premium price paid by Plaintiff for the Arizona brand beverages, while failing to provide a beverage that was "100% NATURAL," Defendants retained a premium price benefit to which they were not entitled.

73. Defendants should not be allowed to retain the profits generated and premium profits realized from the sale of products that were unlawfully marketed, advertised and promoted.

74. Allowing Defendants to retain these unjust profits would offend traditional notions of justice and fair play and induce companies to misrepresent key characteristics of their products in order to increase sales.

75. Thus, Defendants are in possession of funds which were wrongfully obtained and retained from Plaintiff, and which should be disgorged as illegally gotten gains.

## COUNT III

### (BREACH OF EXPRESS WARRANTY)

76. Plaintiff repeats and re-alleges each and every allegation above, as if set forth in full herein.

77. Defendants expressly warranted in their marketing, advertising and promotion of Arizona brand beverages, that their beverages are "100% NATURAL".

78. Plaintiff and members of the Class purchased Arizona brand beverages based upon the above said express warranty.

79. Defendants breached their express warranty by including HFCS in their Arizona brand beverages that they marketed, advertised and promoted as "100% NATURAL." HFCS is a man-made, highly processed sugar substitute that is manufactured by using enzymes (or acids) to alter the chemical structure of starch molecules. HFCS does not exist in nature and is not "100% NATURAL."

80. As a direct and proximate result of Defendant's breach of their express warranty, Plaintiff has been damaged in that he did not receive the Arizona brand beverage as specifically warranted, and paid a premium for the Arizona brand beverage because he believed it was "100% NATURAL."

## COUNT IV

### (BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY)

81. Plaintiff repeats and re-alleges each and every allegation above, as if set forth in full herein.

82. Defendants impliedly warranted that the Arizona brand beverages they manufactured, sold and distributed were "100% NATURAL," and in doing so, that the beverages

were merchantable and fit for their intended purpose.  In representing that Arizona brand beverages were "100% NATURAL" Defendants promised purchasers that Arizona brand beverages would not contain ingredients that were not all natural.  Defendants did so with the intent to induce consumers to purchase those beverages.

83.    Defendant breached those implied warranties in that the products were not "100% NATURAL" as marketed, advertised and promoted.

84.    Had Plaintiff known the true facts, he either would not have purchased the Arizona brand beverages, or would not have been willing to pay the premium price Defendants charged for such beverages.

## PRAYER FOR RELIEF

85.    Plaintiff, on Plaintiff's own behalf and on behalf of the Class, prays for the following relief:

   a. An Order that this action be maintained as a class action and that Plaintiff be appointed class representative.

   b. An Order appointing the undersigned attorneys as class counsel in this action.

   c. A declaration that the use of the phrases "NATURAL," "ALL NATURAL," and/or "100% NATURAL" in the marketing, advertising and promotion of products containing HFCS is misleading, inaccurate and deceptive.

   d. A declaration that Defendants' use of the phrases "NATURAL," "ALL NATURAL," and/or "100% NATURAL" in the marketing, advertising and promotion of their Arizona brand beverages that contain HFCS violates the NJCFA.

   e. A declaration that Defendants breached both express warranties and implied

      warranties of merchantability in marketing, advertising and promoting their Arizona brand beverages as "NATURAL," "ALL NATURAL," and/or "100% NATURAL."

f. A declaration that Defendants have been unjustly enriched by their unlawful practices.

g. An Order enjoining Defendants from marketing, advertising and promoting their Arizona brand beverages as "NATURAL," "ALL NATURAL," and/or "100% NATURAL" so long as they contain HFCS.

h. An Order directing Defendants to pay compensatory damages to Plaintiff.

i. An Order compelling Defendants to reimburse Plaintiff in an amount equal to his ascertainable loss as described above.

j. An Order directing Defendants to pay treble damages to Plaintiff based upon the above violations of the NJCFA.

k. An Order directing Defendants to pay attorneys fees and costs associated with this litigation.

## JURY DEMAND

Plaintiff demands trial by jury on all issues herein stated.

**LITE DEPALMA GREENBERG, LLC**

Dated: July 14, 2011          */s/ Bruce D. Greenberg*
                                        Allyn Z. Lite
                                        Joseph J. DePalma
                                        Bruce D. Greenberg
                                        Katrina Carroll
                                        Two Gateway Center, 12th Floor
                                        Newark, New Jersey  07102
                                        (973) 623-3000

                                                **WILENTZ, GOLDMAN & SPITZER, P.A.**
Daniel R. Lapinski
Lynne M. Kizis
Philip A. Tortoreti
90 Woodbridge Center Drive
Woodbridge, NJ 07095
(732) 636-8000

*Attorneys for Plaintiff Steven Robinson and the Proposed Class*