IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| STEVEN ROBINSON,<br><br>         Plaintiff,<br><br>     v.<br><br>HORNELL BREWING CO., et al.,<br><br>         Defendants. | Civil No. 11-2183 (NLH/JS) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on defendants' application "to compel Plaintiff to be reexamined by Defendants to answer questions regarding his communications with Joseph Santoli ["Santoli"] on April 7, 2011." November 17, 2011 Letter Brief at 1, Doc. No. 34. The Court received plaintiff's opposition which included a request to quash defendants' deposition subpoena served on Santoli [Doc No. 37], and defendants' reply [Doc. No. 38]. The Court exercises its discretion to decide these issues without oral argument. See L. R. Civ. P. 37.1(b)(3).[1]

Plaintiff's class action complaint alleges, inter alia, that

---

[1]Plaintiff was deposed on November 10, 2011. During the deposition plaintiff's counsel instructed plaintiff not to answer several questions on the ground that they asked for information protected by the attorney-client privilege. Although the Court was contacted by phone during the deposition, it did not rule at that time on plaintiff's privilege claim because it did not have the benefit of the parties' briefs and the deposition transcript to review. (N.T. 64:13 to 73:2).

defendants are liable for mislabeling their ice tea beverage as "natural" even though it contained high fructose corn syrup. ("HFCS"). Plaintiff's complaint was filed a few days after oral argument was held on plaintiff's motion for class certification in Coyle v. Hornell Brewing Co., et al., C.A. No. 08-2797 (JBS/JS). The Coyle and Robinson complaints are substantially similar.

Defendants' inquiry is mainly directed at plaintiff's conversations with Santoli on April 7, 2011. Santoli was the lawyer who told plaintiff about the subject HCFS issue and who introduced plaintiff to his counsel-the Wilentz law firm. Plaintiff and Santoli were social acquaintances who both were present in a cigar lounge on April 6, 2011. On that day they briefly spoke about the HCFS issue in dispute. They also were both present in the same lounge on April 7, 2011, when they had a further conversation about HCFS. Santoli signed a retainer agreement with Wilentz on April 8, 2011. Plaintiff's complaint was filed on April 13, 2011.

Plaintiff claims he and Santoli were in an attorney-client relationship as of April 7, 2011 and, therefore, their discussions about HCFS and a potential lawsuit that day are privileged. Defendants dispute the privilege claim. Defendants cite to plaintiff's deposition wherein plaintiff testified Santoli was never his lawyer (N.T. 15:17-22), he never asked Santoli for legal advice (N.T. 18:22-23), and he never considered Santoli his attorney in connection with this lawsuit (N.T. 51:3-7). Plaintiff

2

counters by citing to his testimony that on April 7, 2011, he thought Santoli "was providing services to [him] of a legal nature," (N.T. 87:20-24), and on that day he thought Santoli was acting as his attorney and provided him advice. (N.T. 88:15-24; 100:24 to 101:10). Plaintiff also relies on Santoli's affidavit wherein Santoli avers that on April 7, 2011, he thought plaintiff was looking to him for legal advice which he provided. (Affidavit ¶¶6-7). In addition, Santoli avers he attended a meeting on April 8, 2011, with plaintiff and Wilentz. (Id. ¶9).

A court sitting in a diversity action applies state law with regard to the attorney-client privilege. The burden of establishing that a communication or document is privileged is on the party asserting the privilege. Torres v. Kuzniasz, 936 F. Supp. 1201, 1208 (D.N.J. 1996). The attorney-client privilege protects communications when: (1) the asserted holder of the privilege is or sought to become a client, (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer, (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort, and (4) the privilege has been (a) claimed and (b) not waived by the client. Rhone-Poulenc Rorer Inc.

3

v. Home Indem. Co., 32 F. 3d 851, 862 (3d Cir. 1994). The attorney-client privilege does not apply merely because a statement was made by or to an attorney. Nor does the privilege apply simply because it conveys advice that is legal in nature. HPD Laboratories, Inc. v. Clorox Co., 202 F.R.D. 410, 414 (D.N.J. 2001). Instead, the privilege "protects only those disclosures - necessary to obtain informed legal advice - which might not have been made absent the privilege." Westinghouse Elec. Corp. v. Republic of the Philippines, 951 F.2d 1414, 1423-24 (3d Cir. 1991)(emphasis in original)(citation omitted).

The key issue before the Court is whether plaintiff and Santoli were in an attorney-client relationship on April 7, 2011. Under New Jersey law the attorney-client relationship is "inherently an aware, consensual relationship, one which is founded upon the lawyer affirmatively accepting a professional responsibility." Matter of Palmieri, 76 N.J. 51, 58 (1978)(internal quotations omitted). As noted in Delso v. Trustees for Retirement Plan for Hourly Employees of Merck & Co., Inc., C.A. No. 04-3009 (AET), 2007 WL 766349, at *7 (D.N.J. March 6, 2007), "the attorney-client relationship begins with a non-lawyer's reliance on the professional skills of an attorney, who, in turn, knows of this reliance and accepts responsibility for it." Further, "[t]he relationship must be a mutually aware, consensual relationship.... The client must demonstrate from an identifiable action or manifestation, reliance on an attorney in his professional [legal]

4

capacity.... To complete the relationship, the attorney must accept professional responsibility for the undertaking". Id. (Citations omitted). See also Dixon-Ticonderoga Co. v. Estate of O'Connor, 248 F.3d 151, 169 (3d Cir. 2001). Importantly, the attorney-client relationship can be created in the absence of an express agreement and may be inferred from the conduct of the attorney and client or by surrounding circumstances. Matter of Palmieri, 76 N.J. at 58-60. All that is necessary is that the parties relate to each other generally as attorney and client. Matter of Silverman, 113 N.J. 193, 214 (1988). See also Petit-Clair v. Nelson, 344 N.J. Super. 538, 543 (App. Div. 2001). A leading authority has stated, "the common thread in cases in which a lawyer-client relationship is said to have arisen by implication is reliance of the 'client' on the professional skills of the attorney coupled with the attorney's awareness of that reliance and tacit acceptance of it." Michel, New Jersey Attorney Ethics (Gann, 2011), §13:4-1 p. 250.

Based on the present record the Court finds that there was an implied attorney-client relationship between plaintiff and Santoli (the "parties") on April 7, 2011. The Court also finds that the subject matter of the parties' HCFS conversations concerned legal services and/or assistance with regard to a legal proceeding. Therefore, the Court finds that the parties' April 7 conversations regarding HCFS were privileged. The parties' discussions on April 6 were introductory and preliminary. However, by April 7 the

5

discussions progressed beyond the preliminary stage to a point where plaintiff was relying on Santoli's professional skills. Plaintiff testified to this effect when he said he thought Santoli was providing him legal services and that Santoli was acting as his attorney. At the same time Santoli thought plaintiff was looking to him for legal advice which he provided. This evidences that as to the HCFS discussions on April 7 the parties related to each other generally as attorney and client.

Defendants' argument hinges on plaintiff's seemingly inconsistent deposition testimony. However, when viewed in context the Court credits plaintiff's statement that on April 7 he related to Santoli as an attorney rather than as an acquaintance. When plaintiff testified Santoli was not his attorney he may have been thinking that his lawyer was the individual taking the most active role in the litigation or the lawyer with whom he signed a retainer agreement, e.g., the Wilentz firm. In any event, plaintiff clarified his testimony later in his deposition. (See N.T. 87:20-24; 88:15-24; 100:24 to 101:10).

The Court also discounts defendants' argument that Santoli did not provide facts to support the statements in his affidavit. The Court has already noted that the attorney-client relationship may be inferred from the parties' conduct and the surrounding circumstances. Matter of Palmieri, 76 N.J. at 58-60. To the extent defendants argue or imply that plaintiff's later testimony was "coached" and, therefore, should be discredited, the Court

6

rejects the argument.  Defense counsel questioned plaintiff about "coaching" and received negative responses.  Further, when viewed in context, the Court does not find that the deposition testimony defendants rely upon is completely inconsistent with plaintiff's later testimony.[2]

As to Santoli's deposition, and for the reasons explained above, defendants are not permitted to question him about his HCFS conversations with plaintiff on April 7, 2011.  Nonetheless, Santoli may have had non-privileged conversations with plaintiff (such as their discussion on April 6, 2011) that defendants want to question him about.  It is possible, but the Court does not know for sure, that Santoli may also possess relevant non-privileged documents.  Thus, at this time the Court denies plaintiff's request to quash Santoli's deposition subpona.[3]

In sum, the Court finds that the HCFS conversations between plaintiff and Santoli on April 7, 2011 are protected by the attorney-client privilege.  In view of this holding, the Court does not know if defendants are still interested in re-examining

---

[2]The Court fortunately read plaintiff's entire deposition transcript and not just the pages cited in the parties' briefs.

[3]Santoli's deposition is not necessarily barred because he is an attorney. Johnston Development Group, Inc. V. Carpenters Local Union No. 1578, 130 F.R.D. 348, 352 (1990).  However, caution is necessary where the testimony may be intertwined with privileged information.  Id.  Thus, this Order is entered without prejudice to plaintiff's right to move to quash the entirety of Santoli's deposition and document production after the parties discuss the issue in light of this Order.

plaintiff and deposing Santoli.  The parties should discuss this issue and advise the Court pursuant to L. Civ. R. 37.1(b)(1) if there are any disputes.

Accordingly, for all the foregoing reasons, it is hereby ORDERED this 10th day of January, 2012, that defendants' request to re-examine plaintiff regarding his HCFS conversations with Santoli on April 7, 2011, and their request to depose Santoli on the same subject matter, is DENIED; and

IT IS FURTHER ORDERED that plaintiff's request to quash the entirety of Santoli's deposition subpoena is DENIED without prejudice; and

IT IS FURTHER ORDERED that pursuant to L. Civ. R. 37.1(b)(1), the parties shall promptly advise the Court if there are any remaining discovery disputes regarding the re-examination of plaintiff and the deposition of Santoli.[4]

                                      s/Joel Schneider
                                      JOEL SCHNEIDER
                                      United States Magistrate Judge

---

[4] For the sake of completeness, the Court notes that under New Jersey law attorney-client privileged information may be discoverable.  In re Kovlov, 79 N.J. 232, 243-446 (1979). However, the Court finds that the information defendants seek is not relevant to the underlying merits of the case.  (Albeit, it is arguably relevant to class certification issues.)  The Court also finds that the information defendants are seeking is largely cumulative of what has already been discovered.

8