IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN ROBINSON on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br><br>     v.<br><br>HORNELL BREWING CO., et al.,<br><br>       Defendants. | Civil No. 11-2183 (JBS-JS)<br><br>**OPINION** |

APPEARANCES:

Daniel R. Lapinski, Esq.
Philip A. Tortoreti, Esq.
WILENTZ, GOLDMAN & SPITZER
90 Woodbridge Center Drive
Woodbridge, NJ 07095
     -and-
Allyn Z. Lite, Esq.
Joseph J. DePalma, Esq.
Bruce D. Greenberg, Esq.
Katrina Carroll, Esq.
LITE DePALMA GREENBERG, LLC
Two Gateway Center, 12th Floor
Newark, NJ 07102
     Attorneys for Plaintiff

Robert P. Donovan, Esq.
Lewis H. Goldfarb, Esq.
Jamie Taylor, Esq.
MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
Three Gateway Center
100 Mulberry Street
Newark, NJ 07102
     Attorneys for Defendants

**SIMANDLE**, Chief Judge:

**I.   INTRODUCTION**

This putative class action is before the Court on the motion of Plaintiff Steven Robinson to certify a class pursuant to Fed.

R. Civ. P. 23. [Docket Item 41.]  Plaintiff alleges that, for more than a decade, he was misled by labels on bottles of Defendants' Arizona Brand beverages touting "All Natural" ingredients and thereby induced into buying bottles of Arizona beverages that contained High Fructose Corn Syrup ("HFCS"), which he now believes is not a natural ingredient.  Plaintiff is currently before the Court seeking to certify a Rule 23(b)(2) class of New Jersey consumers who purchased similarly labeled beverages that contained HFCS.  Plaintiff proposes to certify his New Jersey Consumer Fraud Act ("NJCFA") claim on behalf of:

> All New Jersey citizens who purchased within the State of New Jersey, for personal consumption and not for resale, an Arizona brand beverage marketed, advertised and promoted as "100% NATURAL," but which contained HFCS or other non-natural ingredients, from April 13, 2005, until such time as Defendants reform said practice.

Am. Compl. ¶ 20.  Plaintiff seeks, on behalf of this class, to enjoin Defendants from claiming that their products containing HFCS are "all natural."

Defendants oppose the motion for several reasons, including that Plaintiff has not demonstrated that he has standing to pursue injunctive relief on behalf of the class, or that he has met the requirements of Rule 23, Fed. R. Civ. P.  For the reasons discussed below, the Court will deny Plaintiff's motion to certify because Plaintiff has failed to demonstrate that he has Article III standing to pursue

injunctive relief, and is therefore not able to represent this Rule 23(b)(2) class.

**II.  BACKGROUND**

Plaintiff alleges that he had been purchasing Arizona brand iced tea beverages for several years prior to April of 2011, and that each time he did so, his purchase was made, in part, based on his belief that the product was "all natural". Second Am. Compl. ¶¶ 52-55. This belief was created by the fact that the Arizona beverages were marked with labels bearing the representation that the product was "100% NATURAL"; Plaintiff claims to have paid a premium for those products over other iced tea products that were not so marked. Id. at ¶¶ 56-58.

Then, on April 6, 2011, while he was drinking a bottle of Arizona Iced Tea, Plaintiff alleges that he began a conversation with an acquaintance named Joe Santoli. Robinson Dep. at 17:6-8. Mr. Santoli told Plaintiff that the Arizona beverage, in fact, contained HFCS, which Mr. Santoli explained was not a natural ingredient. Id. at 17:8-13. Plaintiff testified that at the time he had already formed the opinion that HFCS was not a natural ingredient, and was surprised to hear that it was an ingredient in Arizona beverages, which he had always believed to be natural. Id. at 17:13; 83:14-17. Mr. Santoli informed Plaintiff that, in fact, people had sued Arizona's owners because

of the labeling of their product.  Id. 17:21-24.

Plaintiff said the conversation ended shortly thereafter, but he did not finish the bottle because he "had a very bad taste in my mouth about it.  And, as I mentioned before, I think that I was deceived and lied to and cheated."  Id. at 83:14-17.  Plaintiff stated that he would not have purchased the Arizona beverages over the years had he known they were not "natural" as he understood that term.

> If it wasn't labeled all natural, I probably wouldn't have purchased it.
> Q: Why?
> A: I don't know. It -- I mean, the taste wasn't, in my opinion, it was okay. It wasn't fantastic.  So I probably wouldn't have purchased it.  I mean, it was a big thing for me.

Id. at 148:23-149:4.  In fact, Plaintiff states that he is unlikely to ever purchase an Arizona beverage again, regardless of whether Defendants change the labels on their Arizona branded products to more accurately reflect Plaintiff's understanding of their ingredients.  Donovan Cert. Ex. D, Pltf.'s Response to Interrogatory No. 36. ("Plaintiff states that due to his current lack of trust regarding Defendants and their products, there are no changes [to Arizona product labeling] that would be sufficient for Plaintiff to purchase Arizona Products in the future.").

Plaintiff retained his current counsel on April 8, 2011. Donovan Cert. Ex. C.  Plaintiff's original Complaint in this matter was filed on April 13, 2011.  [Docket Item 1.]  On May 18,

2011, Plaintiff filed his First Amended Complaint [Docket Item 3], and on July 14, 2011, Plaintiff filed his currently operative Second Amended Complaint [Docket Item 19].  Plaintiff's Second Amended Complaint seeks injunctive relief, on behalf of the proposed class, pursuant to the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-2 (Count I), and seeks on his own behalf damages and restitution under theories of unjust enrichment, common law restitution, breach of express warranty, and breach of the implied warranty of merchantability (Counts II-IV).

Plaintiff filed his motion to certify a class on December 30, 2011.  [Docket Item 41.]  Briefing, including sur-reply briefs from both parties, was complete on the motion on March 23, 2012.  The Court heard oral argument on the motion on April 3, 2012.

### III.  DISCUSSION

#### A.  Standard

"District courts have discretion under Rule 23 to certify a class."  Beck v. Maximus, Inc., 457 F.3d 291, 297 (3d Cir. 2006).  To certify a class, the Court must find that the proposed class meets the prerequisites to a class action and that at least one individually named Plaintiff has Article III standing to raise the legal claims of the class.  See McNair v. Synapse Group Inc.,

5

-- F.3d --, 2012 WL 695655, *6 (3d Cir. Mar. 6, 2012) (holding that if individual plaintiffs lack Article III standing, they are not "entitled to represent the putative Rule 23(b)(2) class they asked the District Court to certify"); In re Chiang, 385 F.3d 256, 264 (3d Cir. 2004) ("plaintiffs must establish that all four requisites of Rule 23(a) and at least one part of Rule 23(b) are met."). "The burden of proving each of the requisite elements of Rule 23 rests with the party seeking certification." Jones v. Goord, 190 F.R.D. 103, 111 (S.D.N.Y. 1999) (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997)).

However, "it is not necessary for the plaintiffs to establish the merits of their case at the class certification stage, and ... in determining whether a class will be certified, the substantive allegations of the complaint must be taken as true." Chiang, 385 F.3d at 262. "Depending on the circumstances, [however,] class certification questions are sometimes 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action,' and 'courts may delve beyond the pleadings to determine whether the requirements for class certification are satisfied.'" Beck, 457 F.3d at 297 (quoting Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 167 (3d Cir. 2001)).

The Third Circuit has explained in some detail the "rigorous analysis" that the district court evaluating a motion to certify

a class must undertake. In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 309 (3d Cir. 2008). Specifically, the Third Circuit held that, to certify a class, a district court must make findings "that each Rule 23 requirement is met." Id. at 310. Thus, Plaintiff has the burden of proving that Article III standing exists as to at least one individually named plaintiff to pursue the identified class relief, and Plaintiff has the burden of introducing evidence sufficient to meet a burden of proof by a preponderance of the evidence that he has met each element of Rule 23.

### B. Article III Standing for Injunctive Relief

Article III of the Constitution of the United States limits the scope of federal courts to actual cases or controversies. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); Danvers Motor Co. v. Ford Motor Co., 432 F.3d 286, 290-91 (3d Cir. 2005). A plaintiff does not present a case or controversy when he or she does not have a personal stake in the ongoing litigation, and as such, a federal court does not have subject-matter jurisdiction over such a suit. See Ballentine v. United States, 486 F.3d 806, 814 (3d Cir. 2007) (summarizing requirements of Article III standing necessary to constitute case or controversy). The Supreme Court has long held that to seek prospective or injunctive relief, plaintiffs (including individually named plaintiffs representing a class) must be able

to demonstrate more than mere injury from past wrongs.  "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974) (quoted in City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983)).

   The Third Circuit recently considered the issue of Article III standing to pursue class-based injunctive relief in a factual and procedural circumstance similar to that confronting the Court in the instant matter.  In McNair v. Synapse Group, Inc., the individual plaintiffs brought claims for damages and injunctive relief under several state consumer fraud statutes, including the New Jersey Consumer Fraud Act.  Under the operative complaint before the Third Circuit, the named plaintiffs sought, on behalf of the proposed class, injunctive relief only, and sought individual damages for their own losses.  McNair v. Synapse Group, Inc., -- F.3d --, 2012 WL 695655, *5 (3d Cir., Mar. 6, 2012).

   The McNair plaintiffs alleged that they had formerly been subscribers of certain magazines that outsourced their subscription services to the defendant Synapse.  Synapse operated the subscription plans on a "continuous service plan," meaning that the subscription would never expire, and the subscriber would continue to be billed for the subscription until the

8

subscriber affirmatively sought to cancel the subscription.  Id. at *1.  The plaintiffs alleged that Synapse's notification mailings, through which it informed the subscribers that the subscription was about to be automatically renewed unless the consumer requested cancellation, were intentionally obscure and designed to prevent all but the most alert or dedicated consumers from successfully cancelling their subscriptions.  Id. at *1-2.  None of the individually named plaintiffs alleged or offered evidence that they were, at the time of the motion to certify, current subscribers to any of defendant Synapse's products.  Id. at *7.  As a result, the Third Circuit concluded that the plaintiffs had not "established any reasonable likelihood of future injury" and therefore "have no basis for seeking injunctive relief against Synapse."  Id. at *8.

      The Third Circuit, relying on City of Los Angeles v. Lyons, 461 U.S. 95 (1983), and subsequent cases, held that when "prospective relief is sought, the plaintiff must show that he is 'likely to suffer future injury' from the defendant's conduct."  McNair at *6 (quoting Lyons, 461 U.S. at 105).  The court further held that "In the class action context, that requirement must be satisfied by at least one named plaintiff."  Id.  Therefore, the court concluded, because none of the identified plaintiffs were currently subscribers to any Synapse product, and none could show a likelihood that they would become subscribers at some definite

point in the future (beyond pure speculation), they all lacked Article III standing to pursue any injunctive relief, and the purely injunctive class they sought to represent could not be certified.

The present case is controlled by McNair. Here, Plaintiff has testified and stated in his answers to interrogatories that he has no intention of ever purchasing any Arizona product in the future. Indeed, he effectively stated that even were Arizona products to alter their labeling to comport with his understanding of the word "natural", he would not benefit from that change because he will no longer purchase such a product. Therefore, Plaintiff cannot demonstrate that he is likely to suffer future injury from Defendant's labeling practices.

Plaintiff's arguments attempting to distinguish McNair are unavailing. First, Plaintiff argues that McNair (as well as other cases regarding standing to pursue injunctive relief) is distinguishable from the instant circumstance based on a theory of "exposure" to a threat of injury from the defendant. Plaintiff argues that the McNair case stands only for the proposition that a plaintiff lacks standing to pursue injunctive relief when the plaintiff is not, at the time the case is filed, currently exposed to the threat of harm. Plaintiff argues that this exposure was absent in the McNair case because none of the named plaintiffs was subscribed to a magazine that outsourced its

subscription services to Synapse. By contrast, Plaintiff argues, he continues to be exposed to the threat of injury every time he sees the allegedly offending "All Natural" label on a container of Defendants' beverages, which happens every time he steps into a convenience store or grocery store that sells such products. Plaintiff argues that, notwithstanding his deposition testimony and answers to interrogatories that he will no longer purchase Arizona products, he continues to be subject to harm by Defendant's "natural" labels because he is "exposed" to them, and is therefore "threatened" by them even if he does not purchase the product itself.

> Plaintiff maintains an interest in any injunctive order relating to Defendants' representations because, until such a time as Defendants are enjoined from unlawfully representing their beverages as "All Natural," Plaintiff is subject to Defendants' repeated violations.

Pltf.'s sur-reply at 2. See also id. note 2 ("That Plaintiff is now knowledgeable of the fact that Defendants' representations are deceptive in no way diminishes Plaintiff's exposure to the unlawful conduct and ongoing threat of harm. Instead, while still being subject to Defendants' unlawful activity, Plaintiff's heightened awareness of Defendants' unlawful activity reduces (but does not eliminate) the likelihood that Plaintiff will ultimately suffer actual harm.").

The Court interprets this argument to suggest one of two

ways that Plaintiff is still subject to the threat of future injury by Defendants' labeling: (1) that merely seeing the label "All Natural" on the Arizona products that Plaintiff is not purchasing will harm him in some way, and/or (2) that despite his disavowal of purchasing Arizona products under oath (and, indeed, his having brought a class action lawsuit against Arizona's owners), it is possible that he may still be misled by the "All Natural" label and be induced into purchasing the product again in the future as a result of Defendants' continuing misrepresentations.  This is not the sort of likelihood of future injury that the McNair court or the Lyons Court had in mind.

This Court concludes that merely seeing a label that Plaintiff believes is incorrect or that he believes could be misleading to others is not the kind of concrete adverse effect or injury necessary to create a cognizable case or controversy required by Article III.  Similarly, Plaintiff's apparent concern that he may still, perhaps accidentally, purchase Defendants' products is too hypothetical or conjectural to create standing to pursue injunctive relief on behalf of the proposed class.  McNair at *7 ("Perhaps they [plaintiffs] may accept a Synapse offer in the future, but, speaking generally, the law accords people the dignity of assuming that they act rationally, in light of the information they possess.").

Indeed, the Court concludes that, far from being

12

distinguishable on this point, the McNair case presented a much closer case than Plaintiff's.  The McNair plaintiffs argued that they were unable to easily identify which magazines outsourced their subscriptions to Synapse, and were therefore at risk of again unknowingly subscribing to a Synapse magazine and being again defrauded by the allegedly misleading Synapse subscription renewal practices.  McNair at note 15.  In the instant matter, by contrast, Plaintiff is not so threatened.  Plaintiff can immediately tell whether the beverage he wishes to buy is being sold by Defendants (and is therefore not actually "natural" has he defines it) because it will be clearly labeled with Defendants' Arizona brand labels.

In oral argument, Plaintiff's counsel analogized the position of Plaintiff in this case to that of a hypothetical dog bite victim.  In the hypothetical, the victim has been attacked and bitten by a dog that continues to wander loose in the neighborhood.  The victim continues to be exposed to the threat of further injury whenever he steps out of his house into the neighborhood, even if he is not actually attacked and bitten every time he opens his door.  This victim would therefore be able to establish standing to pursue injunctive relief to tie up the dog.  Similarly, Plaintiff's counsel argued, Plaintiff Robinson continues to face the exposure to the threat of injury whenever he walks into a convenience store selling Arizona

13

beverages, even if he does not actually purchase the product. The Court finds this analogy unpersuasive because, in the dog bite hypothetical, the victim has no control over whether the dog will attack him, while Plaintiff himself can control the risk of injury by merely refraining from buying the Arizona beverage.  As in McNair, the Court affords the Plaintiff the dignity of assuming he will act rationally in light of the information he possesses.

Additionally, Plaintiff argues that Article III standing is saved in this case because the injury he suffered is "capable of repetition yet evading review" under the mootness doctrine articulated in Merle v. United States, 351 F.3d 92, 94 (3d Cir. 2003).  Plaintiff argues that the injury he suffered will continue to be suffered by other consumers in the proposed class, but that the issue will evade the Court's review because once a consumer becomes aware of the alleged deceptive labeling, he or she can no longer demonstrate standing to pursue injunctive relief.

The McNair court declined to apply the doctrine in a nearly identical context.  The court cited Third Circuit precedent that the "capable of repetition yet evading review" doctrine requires a "reasonable expectation that the same complaining party [will] be subject to the same action again." McNair, 2012 WL 695655 at *7 (quoting Spencer v. Kemna, 523 U.S. 1, 17 (1998)).

> But the inescapable fact is -- as Appellants' speculation about their future actions reflects -- they cannot 'make a reasonable showing that [they] will again be subjected to the alleged illegality.' That means they cannot successfully invoke the 'capable of repetition yet evading review' doctrine.

Id. (quoting Lyons, 461 U.S. at 109) (internal citations omitted). The same result is inescapable here. The Third Circuit has been clear that the "capable of repetition yet evading review" doctrine only applies if the alleged injury may be suffered by the same complaining party, not by some other similarly situated individual. Plaintiff cannot plausibly demonstrate that he is likely to be fooled again into purchasing Defendants' products. Therefore, the Third Circuit has clearly stated that the doctrine does not apply to him; he cannot maintain this action for injunctive relief on behalf of himself, and therefore he cannot maintain it on behalf of the class.

Since Plaintiff lacks Article III standing to represent this class, the Court does not consider the remaining bases of Defendants' opposition to class certification.

**IV. CONCLUSION**

For the reasons stated above, the Court denies Plaintiff's motion for certification of a Rule 23(b)(2) class in this case because he has failed to meet his burden of demonstrating Article III standing to pursue injunctive relief on behalf of the class.

The Court pauses to note that, as a result of the controlling precedent in this area, class action plaintiffs pursuing injunctive relief to prevent consumer fraud may, in general, have a difficult time satisfying the demands of Article III standing. By necessity, such cases can involve only identified plaintiffs who have become aware of the misleading nature of the label. Under the logic of McNair, such individual plaintiffs are therefore unable to plausibly claim a likelihood of being "injured" (i.e., misled) by the label again in the future. This conclusion would seem to prevent any Rule 23(b)(2) class action pursuing injunctive relief against consumer fraud based on mislabeling in federal court for violations of the New Jersey Consumer Fraud Act. While this Court's holding is controlled by the clear precedent of McNair on this point, it is to be hoped that future Third Circuit opinions will clarify whether this is the intended result of the McNair holding.

The accompanying Order will be entered.


 **April 11, 2012**            **s/ Jerome B. Simandle**
Date                           JEROME B. SIMANDLE
                               Chief U.S. District Judge